1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8 SAN JOSE DIVISION

9 J & J Sports Productions, Inc.,                        NO. C 08-00326 JW

10           Plaintiff,           **ORDER GRANTING IN PART AND**
                                 **DENYING IN PART PLAINTIFF'S**

11    v.                                    **MOTION FOR DEFAULT JUDGMENT**

12 Manuel F. Pacis, et al.,

13           Defendants.
                                      /

14 **I.  INTRODUCTION**

15      J & J Sports Productions, Inc. ("Plaintiff") brings this action against Manuel F. Pacis and

16 Rosita T. Pacis ("Defendants") alleging violations 47 U.S.C. § 605 and § 503, and conversion.

17 Plaintiff alleges that Defendants unlawfully intercepted and displayed the broadcast of a boxing

18 match for which Plaintiff owned the exclusive television distribution rights.

19      Presently before the Court is Plaintiff's Motion for Default Judgment.[1]  The Court conducted

20 a hearing on November 24, 2008.  Based on the papers submitted to date and oral argument, the

21 Court GRANTS in part and DENIES in part Plaintiff's Motion for Default Judgment pursuant to

22 Fed. R. Civ. P. 55(b)(2).

23 **II.  BACKGROUND**

24      In a Complaint filed on January 17, 2008, Plaintiff alleges as follows:

25           Plaintiff is a California corporation with its principal place of business in Campbell,

26 California.  (Complaint for Damages ¶ 6, hereafter, "Complaint," Docket Item No. 1.)

27 _____

28      [1] (Plaintiff's Application for Default Judgment by the Court, hereafter, "Motion," Docket Item No. 12.)

*United States District Court*
*For the Northern District of California*

Defendants are the owners and operators who control Mannyla Rose Restaurant in Milpitas, California.  (Id. ¶¶ 7-8.)  Plaintiff purchased the exclusive nationwide television distribution rights to "The Battle:  Erik Morales v. Manny Pacquiao II, WBC International Super Featherweight Championship Fight Program" ("the Program"), a January 21, 2006 television broadcast covering various boxing matches and commentary.  (Id. ¶ 10.)  Plaintiff entered into sublicensing agreements that gave various commercial entities (e.g., hotels, casinos and bars) the rights to publicly display the Program.  (Id. ¶ 11.)

With the full knowledge that the Program was not to be intercepted, received and exhibited by an unauthorized entity, Defendants intercepted and displayed the Program at the time of its transmission at Mannyla Rose Restaurant in Milpitas, California.  (Complaint ¶ 13.)  Defendants' unauthorized interception and exhibition of the Program was for the purpose of commercial advantage or private financial gain.  (Id.)

On the basis of the allegations outlined above, Plaintiff alleges three causes of action:  (1) Violation of 47 U.S.C. § 605; (2) Violation of 47 U.S.C. § 553; and (3) Conversion.  Plaintiff filed the Complaint on January 17, 2008.  On June 30, 2008, Defendant Manuel F. Pacis was served with the Summons and Complaint pursuant to Fed. R. Civ. P. 4(e)(2)(B).  (See Docket Item No. 7.)  On July 26, 2008, Defendant Rosita T. Pacis was served with the Summons and Complaint pursuant to Fed. R. Civ. P. 4(e)(2)(B).  (See Docket Item No. 8.)  On September 15, 2008, the Clerk of Court entered default as to both Defendants.  (See Docket Item No. 11.)

Presently before the Court is Plaintiff's Motion for Default Judgment.

### III.  STANDARDS

Pursuant to Fed. R. Civ. P. 55(b)(2), a party may move the court for an entry of default judgment.  The grant of a default judgment is within the discretion of the court.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986)  In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether

2

the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.  DISCUSSION

The Court proceeds to consider whether default judgment is appropriate.  The decision to grant or deny a default judgment under Fed. R. Civ. P. 55(b) is within the discretion of the Court. See Eitel, 782 F.2d at 1471-72.

**A.      47 U.S.C. §§ 605 and 553**

One of the requirements under Eitel is for the Court to test the merits of Plaintiff's substantive claim.  Upon review of Plaintiff's Complaint, the Court finds that Plaintiff's claims under 47 U.S.C. §§ 605 and 553 are time-barred under the statute of limitations.

Under § 605, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."  47 U.S.C. § 605(a).  Section 605(e) prescribes various civil remedies for anyone injured through a violation of § 605(a).  Recognizing that § 605 does not have its own statute of limitations, the Ninth Circuit has held that, for § 605 actions brought in California, the one-year statute of limitations under the California Piracy Act, Cal. Penal Code §§ 593d, *et seq.*, applies.  DirectTV, Inc. v. Webb, Nos. 04-56847, 04-56913, 2008 U.S. App. LEXIS 20312, *34-35 (9th Cir. Sep. 15, 2008).[2]

Under § 553, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).  The primary difference between § 553 and § 605 is that § 553 prohibits interception of "service offered over a cable system" and § 605 prohibits interception of "any radio communication."  Compare 47

---

[2]  The Ninth Circuit in DirectTV noted that the general rule, based on longstanding practice and Congressional expectations, is to apply a local limitation period applicable to an analogous state law when federal law does not supply one.  DirectTV, 2008 U.S. App. LEXIS 20312 at *19-20 (citing various Supreme Court cases).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

U.S.C. § 553, <u>with</u>, 47 U.S.C. § 605; <u>see</u> <u>also</u> <u>J & J Sports Prods., Inc. v. Manzano</u>, No. C-08-1872, 2008 WL 4542962, *2 (N.D. Cal. Sep. 28, 2008).  Indeed, California courts have expressly recognized the parallel between the Piracy Act and § 553.  "The clear purpose of [Cal. Penal Code § 593d] is to deter the theft of cable by requiring the customers who receive cable transmissions and the entities who distribute equipment to receive those transmissions to obtain authorization . . . .  The federal law achieves that aim in [47 U.S.C. § 553(a)] while the state achieves it in section 593d, subdivision (a) . . . ."  <u>People v. Prevost</u>, 60 Cal. App. 4th 1382, 1396-97 (1998).  Thus, although the Ninth Circuit has not expressly made such a holding, the Court finds that the one-year statute of limitations applicable to the California Piracy Act and § 605 also applies to § 553 claims brought in California.

In this case, the Complaint alleges that Defendants' alleged violative act of intercepting and showing the Program occurred on January 21, 2006.  (Complaint ¶ 10; Declaration of Affiant at 2, Docket Item No. 12.)  Plaintiff filed this action on January 17, 2008, almost two years after Defendants' unlawful interception.  The statute of limitations, however, does not begin to run until the date that Plaintiff knew or had reason to know that Defendants intercepted the Program without authorization.  <u>See</u> <u>DirectTV</u>, 2008 U.S. App. LEXIS 20312 at *35 (quoting <u>Stanley v. Trustees of Cal. State Univ.</u>, 433 F.3d 1129, 1136 (9th Cir. 2006)).

At oral argument, Plaintiff's counsel represented that Plaintiff generally hires investigators from AuditMasters to investigate possible interceptions of Plaintiff's Program.  The AuditMasters investigator who witnessed Defendants' alleged interception signed and had his affidavit notarized on January 25, 2006.  (<u>See</u> Declaration of Affiant at 2.)  The Court finds that Plaintiff's causes of action under § 605 and § 553 accrued no later than January 25, 2006, because the completion of the investigator's report should have placed Plaintiff on notice of its injury.  Plaintiff, therefore, had until January 25, 2007 to file its claims.  Since Plaintiff did not file the Complaint until January 17, 2008, its claims under § 605 and § 553 are time-barred.

Accordingly, the Court DENIES Plaintiff's Motion for Default Judgment as to its First and Second Causes of Action for violations of 47 U.S.C. §§ 605 and 553.

4

**B.      Conversion**

With respect to Plaintiff's claim for conversion, the Eitel factors favor granting default judgment.

First, to state a claim for conversion under California law, a plaintiff must allege (1) ownership of a right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906 (9th Cir. 1992). Here, Plaintiff alleges that (1) it owns the exclusive nationwide television distribution rights to the Program,[3] (2) Defendants have misappropriated and broadcast the Program without authorization, and (3) Plaintiff has incurred substantial expense in marketing the Program and that Defendants interception caused economic distress. (Complaint ¶¶ 10, 12, 13, 25.) Thus, the sufficiency of Plaintiff's Complaint with respect to the conversion claim favors granting default judgment.

Second, once the Clerk of Court enters default, all well-pled allegations regarding liability are taken as true except as to the amount of damages. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Here, since default was entered on September 15, 2008, Plaintiff's allegations are taken as true. Thus, the merits of Plaintiff's substantive claims and the possibility of a dispute concerning material facts also favor a granting of default judgment.

Third, the possibility of prejudice to Plaintiff favors default judgment. Plaintiff contends that it attempted to resolve this matter informally with Defendants. (Motion at 2.) However, Plaintiff was unsuccessful. Thus, if the Court denies Plaintiff's Motion, there is a significant possibility of prejudice to Plaintiff because it would be effectively left without a remedy. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Finally, the amount of money at stake favors default judgment. Damages for conversion are based on the value of the property at the time of conversion. Arizona Power Corp. v. Smith, 119 F.2d 888, 890 (9th Cir. 1941). Plaintiff seeks damages in the amount of $1,600 for Defendants'

---

[3] See In re Sandoval, 341 B.R. 282, 295-96 (Bankr. C.D. Cal. 2006) (holding that a plaintiff must establish the exclusive rights to a broadcast to establish conversion).

United States District Court

For the Northern District of California

conversion.[4]  Plaintiff bases its damages on the commercial license fee Plaintiff would have charged

a commercial establishment with an occupancy of 101 to 200 people and the investigator's affidavit

stating that there were 100 to 120 persons viewing the Program at the Defendants' restaurant.  (See

Declaration of Affiant at 1; Supplemental Brief in Support of Plaintiff's Application for Default

Judgment at 2, Ex.1, Docket Item No. 17.)  Based on the evidence submitted by Plaintiff, the Court

finds that $1,600 is the appropriate amount of damages for Plaintiff's conversion claim.

Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment as to its Third

Cause of Action for Conversion.

## V.  CONCLUSION

The Court DENIES Plaintiff's Motion for Default Judgment with respect to its First and

Second Causes of Action for violations of 47 U.S.C. §§ 605 and 553.  The Court GRANTS

Plaintiff's Motion for Default Judgment with respect to its Third Cause of Action for Conversion.

The Court DISMISSES Plaintiff's First and Second Causes of Action with prejudice as time-

barred.

Judgment will be entered in favor of Plaintiff in the amount of $1,600.  Since the Court has

dismissed Plaintiff's federal claims and the judgment is only as to Plaintiff's state law claim for

conversion, no fees and costs will be awarded.[5]

Dated:  December 15, 2008

JAMES WARE
United States District Judge

---

[4]  (Declaration of Thomas P. Riley in Support of Plaintiff's Application for Default Judgment ¶ 7, hereafter, "Riley Decl.," Docket Item No. 12.)

[5]  Plaintiff would have been entitled to reasonable fees and costs under § 605(e)(3)( B)(iii).

United States District Court

For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Thomas Peter Riley tprlaw@att.net

**Dated:  December 15, 2008**                    **Richard W. Wieking, Clerk**

                                                          **By:      /s/ JW Chambers**
                                                                **Elizabeth Garcia**
                                                                **Courtroom Deputy**